1  Tanya E. Moore, SBN 206683
   MOORE LAW FIRM, P.C.
2  300 South First Street, Suite 342
   San Jose, California 95113
3  Telephone (408) 298-2000
   Facsimile (408) 298-6046
4  E-mail: service@moorelawfirm.com

5  Attorney for Plaintiff
   Francisca Moralez

6

7

8                **UNITED STATES DISTRICT COURT**

9                **NORTHERN DISTRICT OF CALIFORNIA**

10

11 | FRANCISCA MORALEZ,                              ) No.
                                                    )
12 |            Plaintiff,                          ) **COMPLAINT FOR:**
                                                    )
13 |       vs.                                      )
                                                    ) 1) **Denial of Access under Title III of
14 | GRAND WHEELCHAIR & MEDICAL                     )    the Americans with Disabilities Act
     SUPPLY INC.; JOSE P. SILVA, Trustee of         )    of 1990 (ADA)**
15 | the SILVA FAMILY TRUST dated February          )
     13, 1991; RITA M. SILVA, Trustee of the        ) 2) **Denial of Access under the
16 | SILVA FAMILY TRUST dated February 13,          )    California Unruh Civil Rights Act**
     1991;                                          )
17 |                                                ) 3) **Retaliation under the ADA and
                                                    )    California Unruh Civil Rights Act**
18 |            Defendants.                         )
                                                    ) 4) **Breach of Contract**
19                                                  )
                                                    ) 5) **Specific Performance**
20                                                  )
                                                    ) 6) **Denial of Full and Equal Access to
21                                                  )    Public Facilities**
                                                    )
22                                                  )
                                                    )
23 |_____   )

24

25

26

27

28

COMPLAINT

Page 1

Plaintiff FRANCISCA MORALEZ ("Plaintiff") alleges as follows:

## I.  PARTIES

1. Plaintiff has physical disabilities, as defined by both state and federal law. Specifically, Plaintiff suffers from rheumatoid arthritis and is substantially limited in her ability to walk, requiring her to use a wheelchair for mobility. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

2. Defendants GRAND WHEELCHAIR & MEDICAL SUPPLY INC.; JOSE P. SILVA, Trustee of the SILVA FAMILY TRUST dated February 13, 1991; and RITA M. SILVA, Trustee of the SILVA FAMILY TRUST dated February 13, 1991 (collectively "Defendants") consist of a person (or persons), firm, and/or corporation, and own, operate, and/or lease the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

> Grand Wheelchair & Medical Supply
> 41917 Albrae Street
> Fremont, CA 94538
> (hereafter "the Facility")

## II.  JURISDICTION

3. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4. Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5. Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.  VENUE

6. All actions complained of herein take place within the jurisdiction of the United States District Court, Northern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

# IV. FACTS

7. In December 2017, Plaintiff brought a legal action against Defendants in the United States District Court, Northern District of California, case number 3:17-cv-06921-WHA ("the Original Action"), seeking an injunction giving her full and equal access to the Facility as required by the federal Americans with Disabilities Act and parallel California law, and for damages resulting from her inability to fully access the Facility.

8. The Facility is open to the public, intended for non-residential use, and its operation affects commerce. The Facility is therefore a public accommodation as defined by applicable state and federal laws.

9. On or about March 28, 2018, Plaintiff and Defendants entered into a Settlement Agreement and Release in Full ("the Settlement Agreement") which provided that Defendants would compensate Plaintiff for her damages, attorney's fees, and costs, and make the following modifications to the Facility such that each item would comply with the new construction standards set forth in the 2010 Americans with Disabilities Act Standards for Accessible Design and California Code of Regulations, Title 24, Part 2, Chapter 11B (the 2016 California Building Code) by September 28, 2018:

   a) Provide proper tow-away signage.
   b) Provide at least four properly configured, located, and identified accessible parking stalls, at least one of which shall be van-accessible.
   c) Provide a properly configured and identified accessible route of travel from each designated accessible parking stall to the Facility entrance.
   d) Provide and maintain proper clear width of the accessible route of travel on the walkway around the perimeter of the building.
   e) Provide proper maneuvering clearances at the exterior side of the Facility entrance door.
   f) Where the vertical height change between the exterior walkway and surrounding landscaping exceeds 4", provide proper edge protection.
   g) Provide a properly configured threshold at the Facility entrance.

      h)      Properly adjust the door operating pressure and closing period at the Facility entrance.

      i)      Provide a proper uninterrupted smooth surface at the bottom of the push side of the Facility entrance door.

      j)      Provide proper knee and toe clearances on the customer side of the sales/service work surface.

      k)      Eliminate excessive height changes within public areas of the Facility.

      l)      Properly secure the carpets and floor mats within public areas of the Facility, or remove the unsecured carpets and floor mats.

      m)      If the sliding glass door serving the repair shop is a required emergency exit, or is ever permitted to be used by non-employees, provide a properly configured threshold and proper clear width of the doorway opening, and provide and maintain proper clear width of the route of egress from the door.

      n)      Provide and maintain proper clear width of the routes of travel throughout public areas of the Facility.

      o)      Provide proper clear floor space at the merchandise displays.

      p)      Provide a fully compliant unisex or women's restroom.

10.     A true and correct copy of the Settlement Agreement is attached hereto as Exhibit A.

11.     Plaintiff visited the Facility on or about March 16, 2019 seeking to have her wheelchair serviced. During such visit to the Facility, Plaintiff discovered that many of the barriers to her access which were to have been remediated by that time pursuant to the Settlement Agreement in fact remained, some of which interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility during her visit. Plaintiff is aware of the following barriers which still exist at the Facility and relate to her disabilities:

//

      a)      The left parking stall in the pair of designated accessible parking stalls on the north side of the building was excessively sloped, which made it difficult for Plaintiff to unload from her vehicle.

      b)      Tow-away signage did not contain the required reclaiming information.

      c)      Edge protection was not provided along the walkway where the landscaping was more than 4 inches below the walkway surface, which made it difficult for Plaintiff to maneuver her wheelchair.

      d)      The threshold at the Facility entrance was high.

      e)      The customer side of the service desk lacked proper knee and toe clearances, which made it difficult for Plaintiff to use the desk.

      f)      The medical supplies aisle lacked proper clear width and clear floor space at merchandise displays.

12. In or about early 2019, Plaintiff required service on her wheelchair and contacted Defendant GRAND WHEELCHAIR & MEDICAL SUPPLY INC. ("Grand Wheelchair") to request service. Plaintiff left a message with Grand Wheelchair's owner, but having failed to receive a return call, Plaintiff visited the Facility on or about March 16, 2019 to request service in person. On that date, Plaintiff spoke to a Grand Wheelchair employee who indicated that Grand Wheelchair would service Plaintiff's wheelchair. However, after Plaintiff left the Facility, she received a call from the owner of Grand Wheelchair, who informed her that Grand Wheelchair could not work on Plaintiff's wheelchair because they no longer serviced the area where she lived and were too busy.

13. Prior to filing the Original Action, Plaintiff had her wheelchair serviced regularly by Grand Wheelchair for 11 years and had never been told that they did not service the area where she lived, or that they were too busy to work on her wheelchair.

14. In or about early 2020, Plaintiff received a phone call from another Grand Wheelchair employee, who told her he was looking through customer records and noticed that Plaintiff had not had her wheelchair serviced in some time. Plaintiff and he agreed that Grand Wheelchair would pick up Plaintiff's wheelchair for service on the following Tuesday.

1  However, the next day, the same employee called Plaintiff back and informed her that Grand
2  Wheelchair could not pick up her wheelchair because, once again, they were "too busy."

3      15.    Plaintiff believes that Grand Wheelchair's refusal to service her wheelchair was
4  in retaliation for her previous lawsuit against the company and her efforts to enforce her civil
5  rights. On information and belief, Plaintiff alleges that each time she was initially told she
6  would receive service by a Grand Wheelchair employee, it was because those employees were
7  unaware of her identity and, after learning of same, Grand Wheelchair refused to assist her in
8  retaliation for her having filed the Original Action.

9      16.    The barriers identified in paragraph 10 herein are only those that Plaintiff
10 currently has knowledge of. Plaintiff has not had the opportunity to conduct a full reinspection
11 of the Facility and accordingly is presently unaware of other barriers which may in fact exist at
12 the Facility and relate to her disabilities. Plaintiff may seek to amend this Complaint if such
13 additional barriers are identified as it is Plaintiff's intention to have all barriers which still exist
14 at the Facility and relate to her disabilities removed to afford her full and equal access.

15     17.    Plaintiff was, and continues to be, deterred from visiting the Facility because
16 Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and
17 accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.
18 Plaintiff requires the goods and services offered at the Facility due to her disabilities, and the
19 Facility is relatively local and convenient to Plaintiff. She desires to return to the Facility once
20 the barriers are removed.

21     18.    Defendants knew, or should have known, that these elements and areas of the
22 Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to
23 the physically disabled. Moreover, Defendants have the financial resources to remove these
24 barriers from the Facility (without much difficulty or expense), and make the Facility
25 accessible to the physically disabled. To date, however, Defendants refuse to either remove
26 those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

27     19.    At all relevant times, Defendants have possessed and enjoyed sufficient control
28 and authority to modify the Facility to remove impediments to wheelchair access and to

1 comply with the 1991 ADA Accessibility Guidelines and/or the 2010 ADA Standards for
2 Accessible Design. Defendants have not removed such impediments and have not modified the
3 Facility to conform to accessibility standards. Defendants have intentionally maintained the
4 Facility in its current condition and have intentionally refrained from altering the Facility so
5 that it complies with the accessibility standards.

6     20. Plaintiff further alleges that the (continued) presence of barriers at the Facility is
7 so obvious as to establish Defendants' discriminatory intent. On information and belief,
8 Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere
9 to relevant building standards; disregard for the building plans and permits issued for the
10 Facility; conscientious decision to maintain the architectural layout (as it currently exists) at the
11 Facility; decision not to remove barriers from the Facility; and allowance that Defendants'
12 property continues to exist in its non-compliant state. Plaintiff further alleges, on information
13 and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the
14 Facility are not isolated or temporary interruptions in access due to maintenance or repairs.

## V.     FIRST CLAIM

**Denial of Access under Title III of the Americans with Disabilities Act of 1990**

**(Against All Defendants)**

<u>Denial of "Full and Equal" Enjoyment and Use</u>

20     21. Plaintiff re-pleads and incorporates by reference the allegations contained in
21 each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

22     22. Title III of the ADA holds as a "general rule" that no individual shall be
23 discriminated against on the basis of disability in the full and equal enjoyment (or use) of
24 goods, services, facilities, privileges, and accommodations offered by any person who owns,
25 operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

26     23. Defendants discriminated against Plaintiff by denying Plaintiff "full and equal
27 enjoyment" and use of the goods, services, facilities, privileges and accommodations of the
28 Facility during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

24. The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

25. When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

26. Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendant violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

27. In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

Failure to Design and Construct an Accessible Facility

28. Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1993 – independently triggering access requirements under Title III of the ADA.

29. The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

30. Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

### Failure to Make an Altered Facility Accessible

31. Plaintiff alleges on information and belief that the Facility was modified after January 26, 1993, independently triggering access requirements under the ADA.

32. The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

33. Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

34. The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

35. Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

### Failure to Maintain Accessible Features

36. Defendants additionally violated the ADA by failing to maintain in operable working condition those features of the Facility that are required to be readily accessible to and usable by persons with disabilities.

37. Such failure by Defendants to maintain the Facility in an accessible condition was not an isolated or temporary interruption in service or access due to maintenance or repairs.

//

38. Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

## VI.  SECOND CLAIM

### Denial of Access under the California Unruh Civil Rights Act

### (Against All Defendants)

39. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

40. California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

41. California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

42. California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

43. Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

44. These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

45. Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of $4,000 for each offense.

46. Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

//

//

## VII.  THIRD CLAIM

### Retaliation

### (Against Defendant Grand Wheelchair)

47. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

48. Defendant Grand Wheelchair's actions in denying service to Plaintiff were expressly in retaliation against Plaintiff as a result of Plaintiff's efforts to enjoy her rights under the ADA, and discriminated against Plaintiff for having sought to enforce those rights.

49. The ADA provides that "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).

50. The ADA's implementing regulations further expressly prohibit "[r]etaliating against any person because that person has participated in any investigation or action to enforce the Act or this part." (28 C.F.R. §36.206(c)(4).)

51. The Unruh Act also prohibits interfering with, or attempting to interfere with, the exercise of enjoyment of the rights secured under the Act by any individual seeking to enforce, exercise or enjoy such rights. Cal. Civ. Code § 52.1(b).

52. Defendant Grand Wheelchair has retaliated against Plaintiff for her previous lawsuit enforcing her rights under the ADA by unreasonably delaying servicing her wheelchair under the pretext that they were "too busy" or lacked sufficient staffing, when this had never been raised before her lawsuit.

53. As a proximate result of Defendant Grand Wheelchair's conduct, Plaintiff has suffered embarrassment, anxiety, emotional distress, and inconvenience. She could not use her wheelchair for some time because it was in disrepair.

54. As a result of Defendant Grand Wheelchair's conduct, Plaintiff is, and continues to be, deterred from returning to the Facility because it has been made clear to her that she is not welcomed. Plaintiff wishes to return to the Facility because it is one of the few wheelchair

1  service companies in the area where she lives, in a convenient location, and she often requires
2  service and repairs on her wheelchairs. Therefore, Plaintiff has no adequate remedy at law and
3  seeks an injunction prohibiting Defendant Grand Wheelchair from refusing or unreasonably
4  delaying serving her on account of her seeking to enforce her civil rights. Absent an injunction,
5  Defendant Grand Wheelchair will continue to retaliate against Plaintiff and to deny her service.

6  55. Therefore, Plaintiff has no adequate remedy at law and seeks an injunction
7  prohibiting Defendant Grand Wheelchair from further retaliating against her.

8  56. Plaintiff seeks all relief available under the ADA and Unruh Act (i.e., injunctive
9  relief, attorney fees, costs, and litigation expenses) for these aforementioned violations. 42
10 U.S.C. § 12205.

## VIII. FOURTH CLAIM

### Breach of Contract

### (Against All Defendants)

57. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

58. On or about March 28, 2018, Plaintiff and Defendants entered into the Settlement Agreement, which provided, in part, that Defendants would remove certain barriers to access from the Facility by September 28, 2018.

59. On or about September 29, 2018, Defendants breached the Settlement Agreement by failing to perform the required barrier removal.

60. Plaintiff has performed all of her obligations to Defendants under the Settlement Agreement, including but not limited to dismissal of her previous lawsuit against Defendants.

61. Plaintiff brings this action to enforce the Settlement Agreement; specifically, she seeks an order requiring Defendants to remove barriers to her access at the Facility pursuant to the Agreement.

62. The Settlement Agreement additionally provides that the prevailing party is entitled to reasonable costs, attorney's fees, and expenses reasonably incurred in any action brought to enforce the Settlement Agreement. As such, Plaintiff seeks recovery of her

attorney's fees, costs, and litigation expenses incurred in bringing this action.

63. As a proximate result of Defendants' breach of the Settlement Agreement, Plaintiff has suffered damages according to proof but in no case less than $4,000 statutory minimum damages under the Unruh Act.

## IX. FIFTH CLAIM
## Specific Performance
### (Against All Defendants)

64. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

65. As a result of Defendants' breach of the Settlement Agreement, Plaintiff is, and continues to be, deterred from returning to the Facility because she is aware that barriers to her access remain. Plaintiff wishes to return to the Facility because it is one of the few wheelchair service companies in the area where she lives, in a convenient location, and she often requires service and repairs on her wheelchairs. Therefore, Plaintiff has no adequate remedy at law and seeks an injunction requiring Defendants to remove the barriers to her access as required by the Settlement Agreement.

## X. SIXTH CLAIM
## Denial of Full and Equal Access to Public Facilities
### (Against All Defendants)

66. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

67. Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

68. Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or

COMPLAINT

Page 13

structurally repaired, is required to comply with this chapter.

69. Plaintiff alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

70. Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1. Injunctive relief, preventive relief, or any other relief the Court deems proper.
2. Specific performance of Defendant's obligations for barrier removal pursuant to the parties' written Settlement Agreement of March 28, 2018.
3. Statutory minimum damages under section 52(a) of the California Civil Code according to proof.
4. Attorneys' fees, litigation expenses, and costs of suit.[2]
5. Interest at the legal rate from the date of the filing of this action.
6. For such other and further relief as the Court deems proper.

Dated: July 10, 2020    MOORE LAW FIRM, P.C.

        */s/ Tanya E. Moore*
        Tanya E. Moore
        Attorney for Plaintiff
        Francisca Moralez

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

COMPLAINT

Page 14

# VERIFICATION

I, FRANCISCA MORALEZ, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated:  7/10/2020                                                    */s/ Francisca Moralez*
                                                                                Francisca Moralez

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that her concurrence in the filing of this document and attribution of her signature was obtained.

                                                                                */s/ Tanya E. Moore*
                                                                                Tanya E. Moore, Attorney for
                                                                                Plaintiff, Francisca Moralez